E-FILED; Baltimore City Circuit Court
Docket: 1/21/2025 1:43 PM; Submission: 1/21/2025 1:43 PM
Envelope: 19615177

LEKESHIA BLUE, individually and as
Personal Representative of the Estate of
JAMES EDWARD BLUE, III, and as
mother and Next friend of P.B. (minor child)
and L.B. (minor child)
████████████ Rd.
████████████

and

Jadan Blue
████████████.
████████████

                Plaintiffs,

    vs.

GABRIELLE ELLIS
500 East Baltimore Street
Baltimore, MD 21202

CHRISTOPHER D. HEATH
601 E Fayette St
Baltimore, MD 21202

ADRIENE Y. BYRD
601 E Fayette St.
Baltimore, MD 21202

MICHAEL S. HARRISON, Police
Commissioner for Baltimore City Police
Department (*Former*), in individual and
official capacity
601 E. Fayette Street
Baltimore, MD 21202

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

IN THE CIRCUIT COURT

OF

MARYLAND

FOR

BALTIMORE CITY

Case No.: C-24-CV-25-000703

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff, Lekeshia Blue, individually and as Personal Representative of the Estate of James Edward Blue, III, and as mother and next friend of P.B. (minor) and L.B. (minor); and Jadan Blue, by and through undersigned counsel, and sues the Baltimore City Police Department, Police Commissioner Michael S. Harrison, Officer Gabrielle Ellis, Christopher D. Heath, and Adriene Y. Byrd, each in their individual and official capacities, and for reasons states as follows:

## INTRODUCTION

1. This is an action for money damages brought under 42 U.S.C. § 1983 and the laws of the State of Maryland against MICHAEL S. HARRISON, Police Commissioner (former), GABRIELLE ELLIS, CHRISTOPHER D. HEATH, ADRIENE Y. BYRD, for their deliberate indifference to Mr. James Edward Blue, III's constitutional rights, resulting in his untimely wrongful death.

2. On January 25, 2022, James Edward Blue, III was senselessly murdered by Sahiou Kargbo, an individual for whom an arrest warrant had been issued almost one moth prior, but not served by Defendants, despite multiple opportunities to do so in violation of Maryland Law and court orders.

3. This tragedy occurred less than three years after a nearly identical incident involving the death of Diandre Barnes, which resulted in a settlement against Baltimore City Police Department (BPD) officers for their failures to serve a valid warrant on a high-risk individual who later killed Barnes.

4. The Defendants' failure to learn from the Barnes case and their continued deliberate indifference to the known risks of leaving violent offenders at large directly led to and

contributed to Mr. Blue's death, demonstrating a pattern and practice of unconstitutional conduct within the BPD and by sworn members of BPD under the command of Michael Harrison, (former commissioner).

## JURISDICTION AND VENUE

Jurisdiction is proper in the Circuit Court for Baltimore City pursuant to Maryland Code, Courts and Judicial Proceedings Article, § 1-501, as the amount in controversy exceeds $30,000.00. Jurisdiction is also proper in the United States District Court for the Northern District of Maryland pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under 42 U.S.C. § 1983, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in the Circuit Court for Baltimore City pursuant to Maryland Code, Courts and Judicial Proceedings Article, § 6-201(a), as the defendants carry on regular business in Baltimore City. Additionally, venue is proper under § 6-201(b), as the cause of action arose in Baltimore City. Venue is also proper in the United States District Court for the Northern District of Maryland pursuant to 28 U.S.C. § 1391(b) as all Defendants are located in this district and the events giving rise to this claim occurred in this district, Baltimore City and Baltimore County, Maryland.

## COMPLIANCE WITH LOCAL GOVERNMENT TORT CLAIMS ACT

Plaintiffs have satisfied the notice of claim prerequisites to suit as specified by the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. Art., § 5-304. As all defendants investigated this action immediately, have actual notice of this matter, made conclusions, public statements and have been aware of these claims since the fatal shooting of Mr. Blue.

## PARTIES

5. Plaintiff Lekeshia Blue is the wife of James Edward Blue, III and the duly appointed Personal Representative of his Estate, individually and as mother and next friend of P.B. (minor child) and L.B. (minor child) who were injured by the loss of her husband, and their biological father, as he was fatally shot on 1/25/2022. They bring these actions in their individual capacities and as wrongful death and survival action beneficiaries of James Edward Blue, III. Plaintiff Jadan Blue, biological son of James Edward Blue, III brings this action in his capacity as a wrongful death and survival action beneficiary of the estate of James Edward Blue, III.

6. Defendant Michael S. Harrison was the Police Commissioner for the Baltimore City Police Department from January of 2019 to June 8, 2023. He is sued in his individual and official capacity as head of the Baltimore City Police Department. At all times relevant hereto Defendant Harrison, Police Commissioner for Baltimore City Police Department (hereinafter "Defendant Harrison") was the Commissioner of the BPD with personal knowledge of this incident and issued statements regarding the fatal shooting of Mr. Blue on the date of incident. He was appointed by the Mayor of Baltimore under the advice and consent of the Baltimore City Council. The Commissioner, in his capacity as such, exercises final policy making authority for BPD, establishes the duties, standards of conduct and discipline of officers. Commissioner Harrison established policies regarding hiring, screening, training, monitoring, supervision and discipline of officers employed by the BPD as well as search and arrest warrant service. At all times relevant hereto, he has acted under color of law, and is joined in this complaint in his individual and official capacity.

7. Defendants Gabrielle Ellis (K421), Christopher D. Heath (I484), and Adriene Y. Byrd (H108), are at all relevant times sworn members of the BPD, employed by BPD, and are sued in their individual and official capacities as all applied for, had specific knowledge of their duty and a duty to execute/serve an arrest warrant obtained for Sahiou Kargbo ordered on December 28, 2021, yet refused to serve same, in violation of Maryland Law, court order, directly causing /contributing to the fatal shooting of James Edward Blue, III.

## FACTS

8. Michael S. Harrison joined the New Orleans Police Department in 1991 as an officer. He served the New Orleans Police Department as:
   a. Sergeant in Major Case Narcotics Section (1995)
   b. Sergeant for the Eighth District (1999)
   c. Sergeant of the Public Integrity Bureau (2000)
   d. Lieutenant of the Public Integrity Bureau (2006)
   e. Lieutenant and Assistant District Commander of the Seventh District (2009)
   f. Commander of the Specialized Investigations Division (2011)
   g. Appointed Superintendent in August 2014 – 2019

9. Michael S. Harrison was appointed acting commissioner of the Baltimore City Police Department in January of 2019 and became the 41st Commissioner on March 12, 2019. He resigned on June 8, 2023.

10. The employment contract for Michael S. Harrison provides that Harrison "is charged with the effective and impartial enforcement of all applicable laws and regulations of the City, the State of Maryland, and the United States for the protection of all citizens who live or work in the City or who visit the City."

11. Michael S. Harrison joined the Police Executive Research Forum (PERF) Board of Directors in 2020. In February 2020, the PERF Board of Directors selected Baltimore Police Commissioner Michael Harrison to serve as PERF Vice President for the remainder of the term.

12. As of March of 2023, Harrison served as the president of the board of directors of the Police Executive Research Forum (PERF).

13. PERF is a national membership organization of police executives, primarily from large city, county, and state law enforcement agencies in the United States. Its key activities include: conducting research on critical issues in policing and developing best practices and recommendations for law enforcement agencies.

14. PERF advocated under Harrison for changes in warrant service practices, such as waiting out suspects subject to warrants. Harrison implemented this "wait out" practice at BPD and encouraged a practice of not attempting to serve and not serving arrest warrants at all despite the arrest warrant subject's escalating and documented crimes of violence to other people.

15. Harrison's involvement with PERF coincided with his role as Baltimore Police Commissioner, which he held from 2019 to 2023. His leadership positions within PERF demonstrate his significant involvement and influence in the organization during his tenure as Baltimore's police commissioner.

16. On 11/5/2021, Sahiou Kargbo was involved as a suspect in a shooting incident in the 1900 block of E. Lafayette Ave., in Baltimore City, Maryland.

17. On 11/5/2021 Officer Antoinette Moore-Diggs detailed, in incident report No. 211101562-1, the 11/5/2021 shooting by Kargbo. Gabrielle Ellis, as the lead detective investigating Kargbo, reviewed and printed Moore-Digg's report on 12/3/2021.

18. Ellis also collected and printed case update notes on Kargbo, including on 12/03/2021, Perez-Harrate's incident narrative supplement to Kargbo's shooting which detailed another

victim's complaint of the 11/5/2021 shooting incident, reported on 11/6/2021, in which Kargbo was shooting at his estranged girlfriend, Ms. Gyant, in anger for a recent breakup.

19. The incident reports and supplements identified Kargbo by his full name (first middle and last); included his home address, identification of his registered vehicle (VIN, make, model and value); the school he attends; his school attendance records; Identification cards, credit cards and paper receipts confirming his home address and present whereabouts; suspected drugs found on or in his property, firearms and firearms materials belonging to Kargbo as well as the present criminal offences he is suspected of committing.

20. On 12/2/2021 at approximately 1130 hours, Ellis again responded to the same residence on the 1900 block of E. Lafayette Ave., in reference to Ms. Gyant's mother's reporting of white residue and bullet fragments inside the rear bedroom. Ms. Gyant's mother reported to Ellis that on 11/6/2021 and again on 11/20/2021 there had been discharges at her front door vestibule and in front of her house. Ellis canvased the area and recovered three shell casings and took pictures of the firearm materials as well as the damage to the residence.

21. On 12/8/2021 Ellis drafted updated progress reports regarding her responding to a specific residence on the 1900 block of E. Lafayette Ave. to victim Gyant, in reference to being shot at again on 12/1/2021 at 2330 hours. Kargbo was the suspected shooter.

22. Ellis was further told that these shooting incidents are for Gyant as a result of her breaking up with Kargbo. Ellis was further informed that the danger was so high that Gyant requested a safety school transfer from her high school.

23. Detectives CHRISTOPHER D. HEATH and ADRIENE Y. BYRD (family crimes detective) also a part of the investigative team with Ellis, were updated daily as Kargbo's shooting at his ex-girlfriend was classified as a domestic matter.

24. On 12/28/2021 Detective Ellis authored a sworn Statement of Charges and Warrant request for Kargbo's arrest for the shooting incident occurring on 11/5/2021, establishing probable cause for his arrest. Arrest warrant # D210378980 was issued on 12/28/2021 ordering the immediate arrest of Kargbo. The warrant and warrant information was immediately shared with Heath and Byrd, who now had specific knowledge of the facts giving rise to the arrest warrant and the existence of the valid warrant itself.

25. Warrant # D210378980, issued 12/28/2021, an order of the District Court of Maryland ordered, "the arrest of KARGBO, SAHIOU to be brought before this court for an Initial Appearance. YOU ARE ORDERED to immediately arrest the above-named person who resides or may be located at: 1553 Northwick Rd. Baltimore, Maryland 21218. IF THE DEFENDANT IS NOT IN THE CUSTODY FOR ANOTHER OFFENSE, Initial appearance is to be held in county in which warrant issued. YOU ARE FURTHER DIRECTED: to immediately to take this person before a judicial officer of the District Court; or, if the warrant so specifies, before a judicial officer of the circuit court. An appearance by video satisfies the requirements of this directive."

26. Under Maryland law, "[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provision ... thus [an arrest under a warrant] is a ministerial act." See State v. Sizer, 230 Md. App. 640, 669 (2016).

27. Maryland Rule 4-212 requires warrants be executed without unnecessary delay and within 10 days.

28. Additionally, all defendants were authorized under Maryland Code, Criminal Procedure Code § 2-204, to make a warrantless arrest of Kargbo's multiple, documented instances of domestic abuse to his ex-girlfriend, Gyant.

29. In the application for criminal charges against Kargbo and request for an arrest warrant, Ellis highlights Kargbo's shooting incidents; his shooting at Gyant on 11/5/2021; that Kargbo was prohibited from possessing or carrying a firearm; that bullet holes were observed in multiple vehicles on the 1900 block of E. Lafayette Avenue in Baltimore City, Maryland from Kargbo's shooting at Gyant and that Gyant had just broken up with Kargbo.

30. All named defendants were aware of Kargbo's multiple acts of violence and attempts to shoot and kill his ex-girlfriend as in a case update of 12/28/21 by Ellis, Ellis wrote that, "warrants were pending for Kargbo's 12/2/2021 incidents [attempted shooting of Gyant]".

31. By 12/28/2021 Byrd and Heath had probable cause to effectuate a warrantless arrest of Kargbo under Md. Code, Crim. Proc. Sec. 2-204.

32. Ellis obtained specific knowledge of Kargbo's whereabouts, including his attendance at school on 26 days between December 1, 2021, and February 4, 2022.

33. On 12/28/2021 acknowledgement of the valid arrest warrant was published to all of BPD by Detective Ellis by way of a "Be On The Look Out" (BOLO) for the person of Kargbo, detailing his full name, last known address, age, race, height, weight, driver's license soundex number, the warrant number, court case number, where he frequents and that he is "known to carry a handgun." Additionally, a full-face color, current photograph of Kargbo was at the center of the BOLO along with a contact number for Ellis.

34. Between November 5, 2021, and January 25, 2022, Kargbo was involved in multiple shooting incidents and an armed robbery, demonstrating an escalating pattern of violent

behavior to other persons; all of which were specifically known to Defendants Ellis, Heath, Byrd, Harrison and members of the Warrant Apprehension Task Force, as evidenced by Defendant Ellis' regularly updated Incident Narrative Reports and Supplement report(s) authored by and/or authored and printed by Ellis through the BPD's AXON Records System (which allows officers to input and track case information and police investigations in real time), and their own respective investigations, for which all defendants shared detailed updates on every day.

35. On 1/21/2022, a Baltimore County judge signed another arrest warrant for Kargbo for holding a gun to the head of a Wendy's employee in Parkville, Maryland. All named defendants were aware of these incidents and valid open warrants as well.

36. Consistent with Commissioner Harrison's "wait out" policy and practice, and in violation of their manifest duty to immediately arrest Kargbo, Defendants Ellis, Heath and Byrd chose to ignore the order to immediately arrest Kargbo, under arrest warrant # D210378980 of 12/28/2021, and their right to make a warrantless arrest under Crim. Proc., sec. 2-204, and instead exposed the citizens of Baltimore City to more certain danger, the inevitable harm of another shooting by Kargbo, and inevitable fatal shooting of Mr. Blue, III.

37. Defendants had ample opportunity and resources to execute their 12/28/2021 arrest warrant of Kargbo, including knowledge of Kargbo's home address, visiting and confirming this address, school location and school attendance by visiting and confirming and obtaining documentation of same from Kargbo's school, but made no effort to do so until after 1/25/2022. Defendants actions are an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another

38. On 1/25/2022, James Edward Blue, III, husband to LEKESHIA BLUE and father to P.B. (minor child) and L.B. (minor child) and Jadan Blue was waiting in his car at 1430 Walker Avenue, Baltimore, Maryland 21239, for a refrigerator delivery as part of a home renovation project. To pass the time, Mr. Blue, III was talking to his son over the telephone about college classes and other family matters.

39. While Mr. Blue was waiting, Kargbo approached his vehicle and consistent with his escalating acts of gun violence, shot Mr. Blue, resulting in extreme pain and suffering and severe bodily injury.

40. Mr. Blue did not pass instantly and was heard over the telephone by his son crying out in agonizing pain and suffering. A neighbor rushed to comfort Blue after the shooting as he was still alive and moving around for some time after being shot.

41. The Defendants' failure to apprehend Kargbo, despite having an active valid arrest warrant for him and knowledge of Kargbo's violent history of domestic violence and whereabouts, was a result of Defendant Harrison's policy of "wait out" warrant subjects and directly led and contributed to Mr. Blue's death.

42. Harrison's actions and policies as well as Defendants Heath, Boyd and Ellis' actions created or increased the danger to Mr. Blue and the public.

43. Commissioner Harrison's 'wait out' policy directly contradicted Maryland Rule 4-212, which requires warrants to be executed without unnecessary delay, and the explicit court order to immediately arrest Kargbo.

44. The defendants' deliberate failure to execute the warrant, despite knowledge of Kargbo's escalating violence, created a state-created danger that directly led to Mr. Blue's death.

45. The policy of not immediately serving warrants on violent offenders increased the risk of harm to the community, including Mr. Blue, violating their right to be secure in their persons under the 4th Amendment and Article 24 of the Maryland Declaration of Rights.

46. Harrison's policy prioritized waiting out suspects over complying with court orders and state law, demonstrating deliberate indifference to the constitutional rights of Baltimore citizens, including Mr. Blue and a reckless disregard of the consequences as affecting the life or property of another.

## PATTERN AND PRACTICE

47. The circumstances surrounding the failure to immediately serve the arrest warrant on Kargbo and Mr. Blue's shooting death bear a striking resemblance to the case of Diandre Barnes, where the BPD's decision to ignore an order to immediately serve an arrest warrant on a high-risk individual resulted in Barnes' death.

48. 5/26/2016, members of the Baltimore City Police Department arrested Mr. Anthony Clark, Jr., as a person suspected of committing an armed robbery of Mr. William Singleton (who reported hearing Clark rack the firearm at his head while robbing Singleton) at a gas station located at 1001 W. North Avenue; fleeing the crime scene, burglary and having an armed stand-off with police upon demonstrating suicidal tendencies.

49. Clark was transported to a local hospital by BPD and his whereabouts were always known to them.

50. Later in the day on 5/26/2016, Defendants Torres, Counsell and Jordan obtained arrest warrants for Mr. Clark regarding the burglary at 2236 Eutaw Place and robbery reported from the same day, detailing the crimes of violence by Clark, substantiating the necessity for an arrest warrant.

51. Defendants Torres, Counsell and Jordan all chose to ignore the order to immediately arrest Clark on their respective arrest warrants and opted to wait for Clark to be discharged from the hospital to execute the arrest warrants, instead.

52. On 5/31/2016 at 6:00am, University of Maryland Police Department Sgt. Damon Seward called the Baltimore City Police Department, Central District to report that Clark walked out of his hospital room as no BPD officer was present to secure him and no warrant was executed on him.

53. On 6/11/2016, Mr. Clark, consistent with the actions observed by the BPD officers who took him into custody, shot and killed DiAndre Barnes.

54. At no time prior to DiAndre Barnes' death, did the Defendant Officers book Clark for the crimes they observed him commit, crimes he allegedly committed on 5/26/2016, for which two separate arrest warrants were secured on 5/26/2016.

55. After DiAndre Barnes' death, the Defendant Officers finally served the arrest warrants on Clark that Defendants Counsell, Dull and Torres had already secured prior to 6/11/2016.

56. On 1/3/2018 the Barnes family filed suit against the defendant BPD officers, BPD commissioner, and other medical systems defendants for their actions and inactions directly leading to failure to immediately arrest Clark; and, fatal shooting of Barnes. The case resulted in a settlement against the named BPD officers on 6/14/2019, during the tenure of Defendant Commissioner Michael Harrison, putting all defendants, including Commissioner Harrison on notice of the grave fatal consequences of immediately failing to serve arrest warrants on dangerous individuals.

57. Despite this prior incident and settlement, the BPD, through Commissioner Harrison and its officers failed to implement necessary changes to prevent similar tragedies,

demonstrating a deliberate indifference to the fatal consequences of failing to immediately arrest violent gun offenders under valid arrest warrants.

58. On 2/11/2022, in a letter addressed to the entire Baltimore Police Department, Commissioner Michael Harrison made the following statements about the warrant obtaining officers and the investigating officers of Kargbo, as to their failure to serve the arrest warrant on Sahiou Kargbo, illustrating his policy of violating court orders to immediately arrest under arrest warrants and condoning the "wait it out" practice by BPD officers related to serving arrest warrants for documented violent suspects:

> "The Department did not execute the Baltimore City arrest warrant issued on December 28 [2021]. The three charges listed were all misdemeanor offenses and the detectives prioritized their efforts on serving warrants for incidents such as homicide and non-fatal shootings."

59. Harrison's statements along with the Barnes' settlement constitute an admission of the named defendant detectives and Harrison's breach of their manifest duties to immediately serve the warrant on Kargbo directly leading to and contributing to the death of James Edward Blue, III.

60. But for the policy of "waiting out" suspects, Kargbo would have been arrested before he could harm Mr. Blue.

61. Defendants' intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another constituted a reckless disregard for public safety.

62. Harrison's failure to change policies after the Barnes case settlement, despite knowing the risks, was a reckless disregard for public safety

63. The failure to learn from the Barnes case and implement proper procedures for warrant service on high-risk individuals constitutes a pattern and practice of unconstitutional conduct by the defendants, showing reckless disregard of the consequences as affecting the life or property of another.

64. Defendants' practice and policy was the "moving force" behind the constitutional violations suffered by Plaintiffs, including the death of Mr. Blue.

## COUNT I – WRONGFUL DEATH ACTION -- NEGLIGENCE; GROSS NEGLIGENCE; DELIBERATE INDIFFERENCE
### (All Defendants)

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. LEKESHIA BLUE, as wife of JAMES EDWARD BLUE, III, individually and as mother and next friend of P.B. and L.B. and Jadan Blue, son of James Edward Blue, III, as primary beneficiaries under Courts and Jud. Proceedings Art. §3-904, bring this wrongful death action against Defendants each individually and in their official capacities as officers of the Baltimore City Police Department, Police Commissioner (former) for the Baltimore Police Department and for reasons state:

67. At all times relevant herein, Defendants Ellis, Byrd and Heath were acting as agents, servants and/or employees of the Baltimore Police Department and/or the City of Baltimore, under the training, supervision, control and discipline of Defendant Commissioner Harrison in further of the BPD and Mayor and City Council of Baltimore within the scope of their employment

68. The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause recognizes two distinct categories of rights—procedural

rights and substantive rights. See, e.g., Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir.1990).

69. James Edward Blue, III had a right to be free from the penalty of death resulting from Commissioner and Defendants' policy and practice of intentionally "waiting out" arrest warrant subjects, which is unjustifiable by any government interest and intended to injure person's in Kargbo's path, such as Mr. Blue.

70. The involved defendant police officers had a duty to comply with the Court ordered Warrant of 12/28/2021 mandating, "the arrest of KARGBO, SAHIOU to be brought before this court for an Initial Appearance. YOU ARE ORDERED to immediately arrest the above-named person who resides or may be located at: 1553 Northwick Rd. Baltimore, Maryland 21218. IF THE DEFENDNAT IS NOT IN THE CUSTODY FOR ANOTHER OFFENSE, Initial appearance is to be held in county in which warrant issued. YOU ARE FURTHER DIRECTED: to immediately to take this person before a judicial officer of the District Court; or, if the warrant so specifies, before a judicial officer of the circuit court. An appearance by video satisfies the requirements of this directive."

71. The defendant/involved police officers acted in an intentional, and/or malicious and/or negligent and/or grossly negligent manner when they directly violated their duty to adhere to the mandates of warrant No. D210378980, another Baltimore County open warrant signed January 21, 2021, resulting from Kargbo's holding a gun to the head of a Wendy's employee in Parkville, Maryland, as well as Criminal Procedure, sec. 2-204, by failing to do the following:

    a. Failing to actually effectuate the physical detention of Mr. Kargbo, on December 28, 2021 upon obtaining a district court arrest warrant for Mr. Kargbo in violation of Md. Rule 4-212; in violation of the exact language of the subject arrest warrant; and in violation of State v. Sizer, 230 Md. App. 640 (2016).

b.  Failing to effectuate the physical detention of Mr. Kargbo *immediately* or on any day before the fatal shooting of Mr. Blue 1/25/2022 (29 days after the court order to immediately arrest), despite having consistent knowledge of Kargbo's whereabouts while in the City of Baltimore and/or the State of Maryland and an acknowledgement of the escalating gun violence committed by Kargbo from 11/5/2021 through 1/25/2022.

c.  Failing to execute their arrest warrant obtained for Mr. Kargbo on 12/28/2021, contrary to each Defendant's personal observations and personal knowledge of Kargbo's committing multiple crimes of gun violence from 11/5/2021 until 12/28/2021 and after.

d.  Demonstrating specific knowledge of their duty to physically maintain control over Mr. Kargbo by eventually executing the arrest warrant issued 12/28/2021 for Mr. Kargbo, but only after the fatal shooting of Mr. Blue.

e.  Demonstrating specific knowledge of each Defendant Officer's duty to arrest Mr. Kargbo pursuant to the warrant obtained and intentionally failing to carry out their specific mandate to execute their obtained warrant on Kargbo; or, take any action to have said mandate carried out[1] despite having specific knowledge of his whereabouts.

f.  Failing to make a warrantless arrest of Kargbo pursuant to Md. Code, Crim. Proc. Sec., 2-204, for his continued and well documented attempted murder of his ex-girlfriend, which defendant officers themselves classified as domestic violence.

g.  Failing to execute the arrest warrant despite specific knowledge of the fatal results of not serving arrest warrants on persons committing gun offences and crimes of violence as exhibited in the Diandre Barnes fatal shooting and case settlement under Michael Harrison in June of 2019.

72. The Defendants, acting under color of state law, deprived Mr. Blue of his rights, privileges, and immunities secured by the Constitution and laws of the United States, including his Fourteenth Amendment right to life and liberty.

73. The Defendants' failure to serve the arrest warrant on Kargbo, despite knowledge of his violent history, escalation of violence and whereabouts, demonstrated deliberate indifference to the known and obvious consequences of their actions.

74. The Defendants' conduct shocks the conscience and violates the decencies of civilized conduct.

---

[1] A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provision. *See State v. Sizer*, 230 Md. App. 640, 669, 149 A.3d 706, 723, 2016 Md. App. LEXIS 1394, *40.

75. The Defendants' deliberate indifference to the safety of Blue and the citizens of Baltimore posed by the continued documented and escalating crimes of gun violence by Kargbo directly and proximately caused and contributed the death of James Edward Blue, III.

76. The defendants' policy and actions violated Mr. Blue's rights under the 4th Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. By failing to execute the warrant as required by law and court order, the defendants created a state-created danger that deprived Mr. Blue of his right to be secure in his person. This unconstitutional policy was the moving force behind the deprivation of Mr. Blue's constitutional rights, directly leading to his death.

77. As a result of the Defendants' actions Plaintiffs, as wife and biological children of James Blue, III suffered damages, including but not limited to:

    a. Economic Damages: Lost income and future earnings Mr. Blue would have provided to support his wife and children; Loss of benefits, including health insurance, retirement contributions, etc.; Funeral and burial expenses; Medical expenses related to the fatal injury prior to death

    b. Non-Economic Damages: Loss of companionship, comfort, and protection for the surviving spouse; Loss of parental care, attention, advice, counsel, and guidance for the children (both minor and adult); Mental anguish and emotional pain and suffering experienced by the family; Loss of consortium for the surviving spouse

    c. Loss of Services: Value of household services and support Mr. Blue provided to the family; Loss of childcare and parental duties for the minor children

    d. Education-Related Damages: Loss of financial support for college education for Jadan Blue who was in college at the time of his father's death.

    e. Loss of potential future educational support for the minor children

**WHEREFORE**, Plaintiffs LEKESHIA BLUE, individually and as Personal Representative of the Estate of JAMES EDWARD BLUE, III, and as mother and Next friend of P.B. (minor child) and L.B. (minor child) and Jadan Blue, respectfully request that this Honorable Court Enter judgment against Defendants, GABRIELLE ELLIS, CHRISTOPHER D. HEATH, ADRIENE Y. BYRD, MICHAEL S. HARRISON, Police Commissioner for Baltimore City Police Department (former), jointly and severally, in an amount in excess of $75,000; award reasonable attorneys' fees and costs, including pursuant to 42 U.S.C. § 1988; Grant injunctive relief mandating changes to the Baltimore Police Department's arrest warrant policy; and, Grant such other and further relief as this Court deems just and proper.

## COUNT II – SURVIVAL ACTION -- NEGLIGENCE; GROSS NEGLIGENCE; DELIBERATE INDIFFERENCE
### (All Defendants)

78. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79. LEKESHIA BLUE, as wife and Personal Representative of the Estate of JAMES EDWARD BLUE, III, brings this survival action against Defendants each individually and in their official capacities as officers of the Baltimore City Police Department, Police Commissioner (former) for the Baltimore Police Department and for reasons state:

80. At all times relevant herein, Defendants Ellis, Byrd and Heath were acting as agents, servants and/or employees of the Baltimore Police Department and/or the City of Baltimore, under the training, supervision, control and discipline of Defendant Commissioner Harrison in further of the BPD and Mayor and City Council of Baltimore within the scope of their employment

81. The involved defendant police officers had a duty to comply with the Court ordered Warrant of 12/28/2021 mandating, "the arrest of KARGBO, SAHIOU to be brought before this court for an Initial Appearance. YOU ARE ORDERED to immediately arrest the above-named person who resides or may be located at: 1553 Northwick Rd. Baltimore, Maryland 21218. IF THE DEFENDNAT IS NOT IN THE CUSTODY FOR ANOTHER OFFENSE, Initial appearance is to be held in county in which warrant issued. YOU ARE FURTHER DIRECTED: to immediately to take this person before a judicial officer of the District Court; or, if the warrant so specifies, before a judicial officer of the circuit court. An appearance by video satisfies the requirements of this directive."

82. The defendant/involved police officers acted in an unreasonable and/or malicious and/or negligent and/or grossly negligent and/or wrongful manner when they directly violated

their duty to adhere to the mandates of warrant No. D210378980 by failing to do the following:

    a. Failing to actually effectuate the physical detention of Mr. Kargbo, on December 28, 2021 upon obtaining a district court arrest warrant for Mr. Kargbo.

    b. Failing to actually effectuate the physical detention of Mr. Kargbo on any day before the fatal shooting of Mr. Blue despite having consistent knowledge of Kargbo's whereabouts while in the City of Baltimore and/or the State of Maryland

    c. Failing to actually execute their arrest warrant obtained for Mr. Kargbo on 12/28/202, contrary to Criminal Procedure, Sec. 2-103, and each Defendant's personal observations and personal knowledge of Kargbo's committing multiple crimes of violence.

    d. Demonstrating specific knowledge of their duty to physically maintain control over Mr. Kargbo by eventually executing the arrest warrant issued 12/28/2021 for Mr. Kargbo.

    e. Demonstrating specific knowledge of each Defendant Officer's duty to arrest Mr. Kargbo pursuant to the warrant obtained and intentionally failing to carry out their specific mandate to execute their obtained warrant on Kargbo; or, take any action to have said mandate carried out[2] despite having specific knowledge of his whereabouts.

    f. Failing to make a warrantless arrest of Kargbo pursuant to Md. Code, Crim. Proc. Sec., 2-204, for his continued and well documented attempts murder of his ex-girlfriend, which defendant officers themselves classified as domestic violence.

    g. Failing to execute the arrest warrant despite specific knowledge of the fatal results of not serving arrest warrants on persons committing gun offences and crimes of violence as exhibited in the Diandre Barnes fatal shooting and case settlement under Michael Harrison in June of 2019.

83. The Defendants, acting under color of state law, deprived Mr. Blue of his rights, privileges, and immunities secured by the Constitution and laws of the United States, including his Fourteenth Amendment right to life and liberty.

84. The Defendants' failure to serve the arrest warrant on Kargbo, despite knowledge of his violent history and whereabouts, demonstrated deliberate indifference to the known and obvious consequences of their actions.

---

[2] A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provision. See State v. Sizer, 230 Md. App. 640, 669, 149 A.3d 706, 723, 2016 Md. App. LEXIS 1394, *40.

85. The Defendants' conduct shocks the conscience and violates the decencies of civilized conduct.

86. The Defendants' deliberate indifference to the safety of Blue and the citizens of Baltimore posed by the continued documented and escalating crimes of gun violence by Kargbo directly and proximately caused and contributed to the death of James Edward Blue, III.

87. The defendants' policy and actions violated Mr. Blue's rights under the 4th Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. By failing to execute the warrant as required by law and court order, the defendants created a state-created danger that deprived Mr. Blue of his right to be secure in his person. This unconstitutional policy was the moving force behind the deprivation of Mr. Blue's constitutional rights, directly leading to his death.

88. As a result of the Defendants' unconstitutional actions, Plaintiff has suffered damages, including but not limited to loss of life, conscious pain and suffering, mental anguish, and loss of companionship.

89. As a result of the unnecessary, intentional, willful, malicious acts and/or collective grossly negligent and improper acts and omissions of all the Defendants, which resulted in the death of James Edward Blue, III, the decedent was caused to sustain conscious pain, suffering and extreme mental anguish and physical injury prior to his death; and his beneficiaries have suffered severely by the loss of their father and husband.

**WHEREFORE**, Plaintiffs LEKESHIA BLUE, individually and as Personal Representative of the Estate of JAMES EDWARD BLUE, III, and as mother and Next friend of P.B. (minor child) and L.B. (minor child) and Jadan Blue, respectfully request that this Honorable Court Enter judgment against Defendants, GABRIELLE ELLIS, CHRISTOPHER D. HEATH, ADRIENE Y. BYRD, MICHAEL S. HARRISON, Police Commissioner for Baltimore City Police Department (former), jointly and severally, in an amount in excess of $75,000; award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; Grant injunctive relief mandating changes to the

Baltimore Police Department's arrest warrant policy; and, Grant such other and further relief as this Court deems just and proper.

### COUNT III – SURVIVAL ACTION --42 U.S.C. sec. 1983 -- MONELL CLAIM, OF POLICY, PATTERN AND PRACTICE OF DELIBERATE INDIFFERENCE
#### (Commissioner (former) Michael Harrison)

90. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

91. At all relevant times, Defendant Michael S. Harrison was the Police Commissioner for the Baltimore City Police Department, serving in this capacity from January of 2019 to June 8, 2023.

92. As Commissioner, Harrison exercised final policymaking authority for the Baltimore Police Department (BPD), establishing duties, standards of conduct, and discipline for officers.

93. The employment contract for Michael S. Harrison provides that Harrison "is charged with the effective and impartial enforcement of all applicable laws and regulations of the City, the State of Maryland, and the United States for the protection of all citizens who live or work in the City or who visit the City."

94. Specific Responsibilities: Harrison's employment contract outlines several specific duties, including:

    a. Managing BPD's functions and operations to enhance public safety
    b. Supervising activities to move BPD towards compliance with the federal Consent Decree
    c. Creating a structure to ensure disciplinary matters are handled appropriately
    d. Ensuring crimes are tracked and categorized appropriately

95. The contract allowed Harrison to bring in up to eight new executive staff members, indicating he had significant control over BPD's leadership and policies.

96. Commissioner Harrison as head of BPD, instead maintained policies, practices, and customs that were the moving force behind the constitutional violations alleged in this Complaint,

specifically the deprivation of James Edward Blue, III's Fourteenth Amendment right to life and liberty.

97. These policies, practices, and customs include, but are not limited to:

   a. Failing to implement and enforce a policy requiring immediate service of arrest warrants as mandated by Maryland law, specifically Maryland Rule 4-212;

   b. Maintaining a custom or policy of "waiting out" suspects rather than promptly serving high-risk warrants, as evidenced by Commissioner Harrison's statement on February 11, 2022, regarding the failure to execute the warrant for Sahiou Kargbo;

   c. Failing to properly train officers on the importance of immediate warrant service and the potential consequences of delay, particularly in light of the Diandre Barnes case;

   d. Failing to educate officers about the facts and settlement of the Diandre Barnes case, which occurred during Harrison's tenure and put the department on notice of the dangers of failing to serve arrest warrants immediately for person's committing gun offenses and crimes of violence (whether felony or misdemeanor);

   e. Failing to implement necessary changes following the Diandre Barnes case to prevent similar tragedies, despite the case resulting in a settlement on June 14, 2019, during Harrison's tenure as Commissioner.

98. Harrison's contract provisions established that:

   a. Harrison had clear authority and responsibility to implement policies and practices to protect public safety.

   b. He was given resources (including the ability to build his own leadership team) to effect change within the BPD.

   c. There were mechanisms in place for regular performance review and accountability.

   d. The City made a significant investment in Harrison's leadership, expecting substantial improvements in BPD operations.

99. Commissioner Harrison was deliberately indifferent to the known risks of leaving violent offenders at large, as evidenced by:

   a. His failure to address the systemic issues identified in the Barnes case, despite heading the BPD during the Barnes litigation and agreeing to the settlement against his BPD officers for their failure to immediately serve Clark's arrest warrant;

   b. His involvement with the Police Executive Research Forum (PERF) and advocacy for "waiting out" suspects, which directly contradicted the lessons that should have been learned from the Barnes case and Maryland Law;

   c. His failure to ensure that the arrest warrant for Sahiou Kargbo, issued on December 28, 2021, was immediately executed, despite Kargbo's known violent history and escalating pattern of gun violence.

100.    This deliberate indifference directly and proximately caused and contributed to the constitutional violations alleged, including the death of James Edward Blue, III on January 25, 2022.

101.    The defendants' policy and actions violated Mr. Blue's rights under the 4th Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. By failing to execute the warrant as required by law and court order, the defendants created a state-created danger that deprived Mr. Blue of his right to be secure in his person. This unconstitutional policy was the moving force behind the deprivation of Mr. Blue's constitutional rights, directly leading to his death.

102.    As a result of Commissioner Harrison's policies and deliberate indifference, Sahiou Kargbo remained at large despite an active arrest warrant and a known history of violence, the location of Kargbo, and the continued police monitoring of Kargbo, ultimately and inevitably leading to the fatal shooting of James Edward Blue, III.

103.    Commissioner Harrison's 'wait out' policy was unconstitutional as it directly contradicted Maryland law and court orders. This policy was the moving force behind the constitutional violations alleged, including the deprivation of Mr. Blue's rights under the 4th Amendment and Article 24 of the Maryland Declaration of Rights. By maintaining this policy despite clear legal mandates and the known risks demonstrated by the Barnes case, Harrison showed deliberate indifference to the constitutional rights of Baltimore citizens, including Mr. Blue.

104.    The striking similarity between the circumstances of Mr. Blue's death and the Diandre Barnes case as well as Harrison's duties under his employment contract demonstrates a pattern of unconstitutional conduct that Commissioner Harrison failed to address, further evidencing his deliberate indifference to the constitutional rights of Mr. Blue.

**WHEREFORE**, Plaintiffs LEKESHIA BLUE, individually and as Personal Representative of the Estate of JAMES EDWARD BLUE, III, and as mother and Next friend of P.B. (minor child) and L.B. (minor child) and Jadan Blue, respectfully request that this Honorable Court Enter judgment against Defendant MICHAEL S. HARRISON, Police Commissioner for Baltimore City Police Department (former) in an amount in excess of $75,000; award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; Grant injunctive relief mandating changes to the Baltimore Police Department's arrest warrant policy; and, grant such other and further relief as this Court deems just and proper.

## COUNT IV – SURVIVAL ACTION -- VIOLATION OF 42 U.S.C. § 1983 - STATE-CREATED DANGER
### (All Defendants)

105.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

106.    The Defendants, acting under color of state law, affirmatively created or enhanced the danger to James Edward Blue, III by:

  a. Implementing and maintaining a "wait out" policy for serving arrest warrants, which directly contradicted Maryland Rule 4-212 requiring warrants to be executed without unnecessary delay;

  b. Failing to serve the arrest warrant for Sahiou Kargbo despite knowledge of his escalating pattern of gun violence and specific whereabouts;

  c. Ignoring the lessons from the similar Diandre Barnes case, which had resulted in a settlement during Commissioner Harrison's tenure;

  d. Prioritizing the "wait out" policy over compliance with court orders and state law, demonstrating deliberate indifference to the constitutional rights of Baltimore citizens.

107.    The danger created was specific to James Edward Blue, III and other citizens in the vicinity of Kargbo, distinct from the danger to the general public.

108.    The Defendants' actions directly caused harm to James Edward Blue, III, as their failure to arrest Kargbo despite ample opportunity allowed him to remain at large and ultimately fatally shoot Mr. Blue.

109.    The Defendants' conduct, when viewed in total, shocks the conscience, as they:

a. Deliberately ignored a court order to immediately arrest a known violent offender;

b. Maintained a policy that directly contradicted state law and increased the risk of harm to citizens;

c. Failed to implement necessary changes following the Barnes case settlement, despite being on notice of the potential fatal consequences.

110.    The Defendants' actions and policies substantially increased the likelihood of harm to James Edward Blue, III, creating a danger that would not have existed absent their affirmative acts.

111.    As a direct and proximate result of the Defendants' creation of this danger, James Edward Blue, III suffered a deprivation of his Fourteenth Amendment right to life and liberty.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants, jointly and severally, in an amount in excess of $75,000; award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; grant injunctive relief mandating changes to the Baltimore Police Department's arrest warrant policy; and grant such other and further relief as this Court deems just and proper.

## COUNT V - PERSONAL REPRESENTATIVE'S CLAIM FOR FUNERAL EXPENSES
### (All Defendants)

112.    Plaintiff incorporates herein by reference paragraphs preceding as if fully set forth herein.

113.    Plaintiff, LEKESHIA BLUE, individually and as Personal Representative of the Estate of JAMES EDWARD BLUE, III, brings this survivor's action against Defendants, and for reasons state:

114.    As a result of the death of James Edward Blue, III, the plaintiff incurred funeral expenses.

115.    The death of James Edward Blue, III and all of the injury, damages and losses complained of were caused jointly and severally by the unnecessary, intentional, willful, grossly negligent and malicious acts and/or omissions of the defendants, without any negligence on the part of the plaintiff or James Edward Blue, III, now deceased, thereunto contributing.

**WHEREFORE**, Plaintiff LEKESHIA BLUE, individually and as Personal Representative of the Estate of JAMES EDWARD BLUE, III, brings this additional count pursuant to Ann. Code of MD, Estates & Trusts Art., Section 7-401 to recover funeral expenses and claims Ten Thousand Dollars ($10,000.00) damages for the Estate of James Edward Blue, III, against all Defendants, jointly and severally.

## COUNT VI - LOSS OF CONSORTIUM
### (All Defendants)

116.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

117.    Plaintiff Lekeshia Blue, individually, and on behalf of minor children P.B. and L.B

118.    At all times relevant to this action, Plaintiff Lekeshia Blue was the lawful spouse of James Edward Blue III, and P.B. and L.B. were his minor biological children.

119.    Pursuant to Maryland Code, Courts and Judicial Proceedings § 3-904(d), Lekeshia Blue, as the surviving spouse, is entitled to recover damages for loss of consortium.

120.    Pursuant to Maryland Code, Courts and Judicial Proceedings § 3-904(e), the minor children P.B. and L.B. of James Edward Blue III are entitled to recover damages for loss of parental consortium.

121.    As a direct and proximate result of Defendants' negligent, grossly negligent, and deliberately indifferent acts and omissions as described herein, Lekeshia Blue has suffered and will continue to suffer the loss of her husband's society, affection, assistance, companionship, and conjugal fellowship.

122.    As a direct and proximate result of Defendants' negligent, grossly negligent, and deliberately indifferent acts and omissions as described herein, the minor children P.B. and L.B. have suffered and will continue to suffer the loss of their father's society, affection, attention, care, companionship, comfort, guidance, and protection.

123.    The damages suffered by Lekeshia Blue and the minor children P.B. and L.B. are separate and distinct from the damages suffered by the Estate of James Edward Blue III and include:

a) Loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support;
b) Loss of enjoyment of sexual relations (for Lekeshia Blue);
c) Loss of the decedent's training and guidance;
d) Mental anguish, grief, and sorrow;
e) Loss of financial support and contributions;
f) Loss of household services and support;
g) Loss of childcare and parental duties for the minor children;
h) All other damages allowable under Maryland law.

**WHEREFORE,** Plaintiff Lekeshia Blue, individually and on behalf of her minor children P.B. and L.B., demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus interest and costs, and for such other and further relief as this Honorable Court deems just and proper.


Respectfully Submitted,


Latoya Francis-Williams, Esq., 1112130127
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133
410-356-4691; 443-548-4588 (fax)
Lfwlaw1@gmail.com
*Attorneys for Plaintiffs*

LEKESHIA BLUE, individually and as        )
Personal Representative of the Estate of   )
JAMES EDWARD BLUE, III, and as             )    IN THE CIRCUIT COURT
mother and Next friend of P.B. (minor child) )
and L.B. (minor child)                     )
████████████ Rd.                           )    OF
                                           )
                                           )    MARYLAND
and                                        )
                                           )    FOR
Jadan Blue                                 )
████████ Rd.                               )    BALTIMORE CITY

                    Plaintiffs,

        vs.

GABRIELLE ELLIS
500 East Baltimore Street
Baltimore, MD 21202

CHRISTOPHER D. HEATH
601 E Fayette St
Baltimore, MD 21202              Case No.: C-24-CV-25-000703

ADRIENE Y. BYRD
601 E Fayette St.
Baltimore, MD 21202



MICHAEL S. HARRISON, Police
Commissioner for Baltimore City Police
Department (*Former*)
601 E. Fayette Street
Baltimore, MD 21202

            Defendants.

_____

## JURY DEMAND

**COMES NOW** Plaintiffs and hereby demands a trial by jury on all issues so triable.

Latoya Francis-Williams, Esq., 1012130327
Law Office of Latoya A. Francis-Williams
P.O. Box 451
Randallstown, Maryland 21133
410-356-4691; 443-548-4588 (fax)
Lfwlaw1@gmail.com
*Attorneys for Plaintiffs*