**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>

|  |  |  |
|---|---|---|
| | * | |
| **LEKESHIA BLUE, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civ. No. MJM-25-441** |
| v. | * | |
| | * | |
| **GABRIELLE ELLIS, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion to Dismiss. ECF No. 14. Plaintiffs filed their Complaint in the Circuit Court of Maryland for Baltimore City, ECF No. 2, and Defendants removed the case to this Court, ECF No. 1, and filed their Motion to Dismiss, ECF No. 14. Plaintiffs filed a response in opposition to the motion, ECF No. 15, and Defendants filed a reply, ECF No. 16. No hearing is necessary to resolve the motion. Loc. R. 105.6 (D. Md. 2025). For reasons stated below, the motion is granted, and the Complaint is dismissed without prejudice.

## I.   FACTUAL BACKGROUND

On January 25, 2022, James Edward Blue, III was murdered by Sahiou Kargbo. *See* ECF No. 2, Redacted Complaint ("Compl.") ¶ 2. The Baltimore City Police Department ("BPD") had issued a warrant for Mr. Kargbo's arrest almost one month prior to the murder but failed to execute the warrant. *Id.* ¶ 3. Lekeshia Blue was the decedent's wife, and Jaden Blue and minors P.B. and L.B. were his children. *Id.* ¶ 5. In January 2025, Lekeshia and Jaden Blue (collectively, "Plaintiffs") filed suit in the Circuit Court of Maryland for Baltimore City against Gabrielle Ellis, Christopher D. Heath, Adriene Y. Byrd, and Michael E. Harrison, former Commissioner of BPD

(collectively, "Defendants"). Each Plaintiff sues individually, and Lekeshia Blue also sues as Personal Representative of the Estate of James Edward Blue, III, and as mother and next friend of P.B. and L.B. *Id.* ¶ 1. Plaintiffs assert a claim for wrongful death and a survival action against all Defendants based on negligence, gross negligence, and deliberate indifference (Counts I and II); a survival action against former Commissioner Harrison based on a policy, pattern, and practice of deliberate indifference under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), (Count III); a survival action against all Defendants for state-created danger under 42 U.S.C. § 1983 (Count IV); and loss of consortium against all Defendants (Count VI). The Personal Representative also asserts a claim for funeral expenses against all Defendants (Count V). Plaintiffs allege the following facts in support of their claims:

Michael Harrison was appointed Acting Commissioner of BPD in January of 2019 and became Commissioner on March 12, 2019. *Id.* ¶ 9. As Commissioner, Harrison implemented changes in warrant service practices at BPD, such as "waiting out" suspects subject to warrants. *Id.* ¶ 14. According to the Complaint, "this 'wait out' practice encouraged a practice of not attempting to serve and not serving arrest warrants at all despite the arrest warrant subject's escalating and documented crimes of violence to other people." *Id.* [1]

On November 5, 2021, Mr. Kargbo was a suspect in a shooting incident on the 1900 block of East Lafayette Avenue in Baltimore City, near Mr. Kargbo's ex-girlfriend's house. *Id.* ¶¶ 16, 18, 20–21. The shooting incident reports and supplements identified Mr. Kargbo by his full name and included, among other information, his home address, vehicle registration information, school records, and information related to suspected drug and firearm crimes connected to Mr. Kargbo.

---

[1] Plaintiffs also allege that Harrison joined the Police Executive Research Forum (PERF) Board of Directors in 2020 and began serving as its President in March 2023. ¶¶ 11–12. Under Harrison's leadership, PERF advocated for changes in warrant service practices, such as waiting out suspects subject to warrants. *Id.* ¶ 14.

*Id.* ¶ 19. Detective Gabrielle Ellis was assigned to investigate Mr. Kargbo. *Id.* ¶ 17. Ellis's investigation revealed that Mr. Kargbo was the suspected shooter in two other shooting incidents on November 6 and 20, also occurring near the 1900 block of East Lafayette Avenue. *Id.* ¶ 20. Mr. Kargbo's suspected shooting at his ex-girlfriend was classified as a domestic matter, so Family Crime Detectives Christopher Heath and Adriene Byrd were also assigned to the case. *Id.* ¶ 23.

On December 28, 2021, Detective Ellis authored a sworn Statement of Charges and warrant request for Mr. Kargbo's arrest for the shooting incident that occurred on November 5. *Id.* ¶ 24. The arrest warrant issued by the District Court of Maryland for Baltimore City ordered,

> the arrest of KARGBO, SAHIOU to be brought before this court for an Initial Appearance. YOU ARE ORDERED to immediately arrest the above-named person who resides or may be located at: 1553 Northwick Rd. Baltimore, Maryland 21218. IF THE DEFENDANT IS NOT IN THE CUSTODY FOR ANOTHER OFFENSE, Initial appearance is to be held in county in which warrant issued. YOU ARE FURTHER DIRECTED: to immediately to take this person before a judicial officer of the District Court; or, if the warrant so specifies, before a judicial officer of the circuit court. An appearance by video satisfies the requirements of this directive.

*Id.* ¶ 25. The warrant was shared with Detectives Heath and Byrd. *Id.* ¶ 24.[2] Plaintiffs allege that, consistent with the "wait out" policy, BPD made no efforts to arrest Mr. Kargbo before January 25. *Id.* ¶¶ 36–37.

On January 25, James Edward Blue, III was waiting in his car at 1430 Walker Avenue, Baltimore, Maryland, for a refrigerator delivery as part of a home renovation project. *Id.* ¶ 38. To pass the time, Mr. Blue was talking to his son over the telephone. *Id.*

While Mr. Blue was waiting, Mr. Kargbo approached his vehicle and shot Mr. Blue. *Id.* ¶ 39. Mr. Blue did not pass instantly and was heard over the telephone by his son crying out in pain.

---

[2] On January 21, 2022, a Baltimore County judge signed another arrest warrant for Mr. Kargbo for holding a gun to the head of a fast food restaurant employee in Parkville, Maryland. *Id.* ¶ 35.

*Id.* ¶ 40. Mr. Blue eventually died from his wounds. On or about February 6, 2023, Mr. Kargbo was convicted after a trial for Mr. Blue's murder.

On February 11, 2022, Commissioner Harrison made the following statement in a letter addressed to the entire BPD:

> The Department did not execute the Baltimore City arrest warrant issued on December 28 [2021]. The three charges listed were all misdemeanor offenses and the detectives prioritized their efforts on serving warrants for incidents such as homicide and non-fatal shootings.

*Id.* ¶ 58.

Plaintiffs' Complaint alleges that, but for the BPD's policy of "waiting out" suspects, Mr. Kargbo would have been arrested before he could harm Mr. Blue. *Id.* ¶¶ 41, 60. Plaintiffs assert that Harrison's policy of "waiting out" arrestees "led and contributed to Mr. Blue's death," generated a state-created danger, and demonstrated "deliberate indifference to the constitutional rights of Baltimore citizens[.]" *Id.* ¶¶ 41, 44, 46.

The Complaint also details the circumstances surrounding the 2016 killing of Diandre Barnes, where BPD's alleged decision "to ignore an order to immediately serve an arrest warrant on a high-risk individual resulted in Barnes' death." *Id.* ¶ 47. In 2019, during Harrison's tenure as Commissioner, the BPD settled a lawsuit with the Barnes family. *Id.* ¶ 56.

## II.      STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim for relief. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    ANALYSIS

### A.  Counts III and IV

Counts III and IV of the Complaint assert a 42 U.S.C. § 1983 survival action against all Defendants for state-created danger and against former Commissioner Harrison for a policy, pattern, and practice of deliberate indifference under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Both counts depend on the allegation that the failure to execute the warrant for Mr. Kargbo's arrest violated Mr. Blue's constitutional rights by exposing him to an increased risk of danger.

In support of dismissal, Defendants argue that, in this case, liability under § 1983 requires constitutional injury, and Plaintiffs fail to plead a cognizable constitutional injury for which any

Defendant is liable. *See* ECF 14-1 at 8–9. Additionally, Defendants argue that even if Plaintiffs sufficiently plead a cognizable injury, they fail to plead that BPD[3] had an unconstitutional policy or custom that caused the alleged violation of Mr. Blue's constitutional rights. *Id.* at 10–11. According to Defendants, Plaintiffs' claims fail to overcome the hurdles necessary to sufficiently allege a state-created danger and do not defeat their immunity from suit.

Plaintiffs argue that their Complaint sufficiently pleads a *Monell* claim because Harrison's "unconstitutional 'wait out' warrant policy constituted deliberate indifference to known risks, directly causing James Blue's death as the moving force behind the shooters [sic] actions." ECF 15-1 at 19. Moreover, Plaintiffs argue, Harrison's "wait out" practice constituted a state-created danger in violation of the Due Process Clause, violated judicial mandates to immediately execute warrants, and qualifies as an official policy attributable to the municipality. *Id.* at 20. Similarly, Plaintiffs argue that Defendants had a non-discretionary duty to arrest Mr. Kargbo and their failure to do so amounted to a state-created danger, which overcomes Defendants' immunity defenses.

Title 42, United States Code, Section 1983 provides a right of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A municipality may be liable under § 1983 for a deprivation of federal rights "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell*, 436 U.S. at 691 ("[In § 1983],

---

[3] Count III is asserted against "Commissioner (former) Michael Harrison" in both his individual and official capacities. *See* Compl. at 1, 22. "Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). As a result, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. Accordingly, the official capacity suit against Harrison is treated as a suit against BPD.

Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Green v. Obsu*, Civ. No. ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citations omitted). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulations; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests" deliberate indifference to the rights of citizens; [or] (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20- 3431, 2021 WL 3510579, at *6 (D. Md. Aug. 10, 2021) (citing *Lytle*, 326 F.3d at 471).

Here, even if Plaintiffs adequately plead an express policy or widespread practice by BPD of delaying execution of arrest warrants (which is doubtful), they fail to plead a cognizable constitutional injury that was proximately caused by any policy or practice by BPD or its officers. Plaintiffs' theory is that "arrest warrants are judicial mandates requiring ministerial execution," and that BPD's "wait out" policy, which Plaintiffs describe as a choice to "deprioritize warrant service of misdemeanor offenses," increased a danger to Mr. Blue and thus violated his due process rights. *See* ECF 15-1 at 20. Ultimately, Plaintiffs' claim is founded upon BPD's failure to protect Mr. Blue from harm inflicted by another private citizen as a due process violation, which is

untenable under the *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), line of cases.

As a general rule, state actors are not liable for harm caused by third parties. The Due Process Clause is "a limitation on the State's power to act, not [ ] a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. So, generally, "the Due Process Clause does not require the State to provide its citizens with particular protective services," and "the State cannot be held liable for injuries that could have been averted had it chosen to provide them." *Turner v. Thomas*, 930 F.3d 640, 645 (4th Cir. 2019) (quoting *DeShaney*, 489 U.S. at 196–97). The U.S. Supreme Court has held that "the benefit [ ] a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005).

There are two exceptions to the general rule: (1) "when the individual and the state have a 'special relationship,' such as a custodial relationship, that gives rise to an affirmative duty to protect[;]" and (2) when a state actor takes "affirmative actions" that "create[ ] or enhance[ ] the dangerous conditions[,]" resulting in injury. *Turner*, 930 F.3d at 645 (citing *DeShaney*, 489 U.S. at 199–201, and *Pinder v. Johnson*, 54 F.3d 1169, 1176 (4th Cir. 1995) (en banc)). The latter exception is known as the "state-created danger" doctrine. *Id.* Importantly, however, a "'key requirement' for liability" under the state-created danger doctrine "is that the state actor increase or create the danger through 'affirmative conduct.'" *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2015) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 650 (D.C. Cir. 2001)). Moreover, "affirmative acts," in the state-created danger context are limited in scope and generally "should not extend 'beyond

the context of immediate interactions between the [state actor] and the plaintiff.'" *Id.* at 441 (quoting *Pinder*, 54 F.3d at 1176).

Here, Plaintiffs allege no immediate interactions between any BPD officer and the decedent that created any danger or increased a risk of harm to the decedent. Although Defendants had a valid arrest warrant they could have executed on Mr. Kargbo before he shot the decedent on January 25, 2022, Plaintiffs do not allege that BPD officers had "any particularized reason" to believe that Mr. Kargbo "posed an ongoing—let alone imminent—threat" to Mr. Blue. *Graves v. Lioi*, 930 F.3d 307, 323 (4th Cir. 2019). Nor is there any allegation that BPD had any "special relationship" with Mr. Blue, "such as a custodial relationship, that [gave] rise to an affirmative duty to protect" him. *Turner*, 930 F.3d at 645.

Plaintiffs' citations to *State v. Sizer*, 149 A.3d 706 (Md. App. Ct. 2016), and Maryland Rule 4-212 do not alter the analysis. According to Plaintiffs, *Sizer* "clarifies that arrest warrants are judicial mandates requiring ministerial execution, stripping officers of discretion." ECF 15-1 at 20. *Sizer* was a criminal appeal of a state trial court's grant of a motion to suppress related to a charge of unlawful possession of a firearm with a nexus to drug trafficking. 149 A.3d at 708. Reversing the suppression ruling, the Maryland Court of Special Appeals (now, Appellate Court of Maryland) relied on the independent source doctrine, reasoning that "[h]owever constitutional or unconstitutional the antecedent *Terry* stop of the appellee in this case may have been, the prior existence of two warrants for the appellee's arrest constituted an independent source for the discovery of the [evidence] taken from the appellee." *Id.* at 663. In that context, the court cited case law noting that a warrant was a "judicial mandate" and thus execution of the warrant was a "a ministerial act." *Id.* at 723 (quoting *Utah v. Strieff*, 136 S. Ct. 2056, 2062–63 (2016)). Accordingly, while police departments and their officers may have a legal duty to fulfill their role

9

in executing warrants, *Sizer* does not say anything about how or when officers must execute arrest warrants, let alone stand for the proposition that issuance of an warrant gives rise to a constitutional duty owed to private citizens requiring the warrant to be executed immediately or otherwise subject police officers to civil liability for the arrestee's independent actions.

Plaintiffs' assertion that Mr. Kargbo's immediate arrest was mandatory under Maryland Rule 4-212 fares no better. Plaintiffs claim that "Maryland Rule 4-212 requires warrants to be executed without unnecessary delay and within 10 days." Compl. ¶ 27. But there is no 10-day requirement in Maryland Rule 4-212, and the references to "unnecessary delay" in Maryland Rule 4-212(e) and (f) concern to the presentment of an arrestee to a judicial officer—not the service of a warrant.

Ultimately, Plaintiffs' arguments are like those rejected by the U.S. Supreme Court in *Town of Castle Rock*, where the Court recognized the "well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes." 545 U.S. at 760. The Fourth Circuit has recognized the same:

> As the Supreme Court recognized in *Town of Castle Rock*, even mandatory language in a temporary restraining order—or, here, an arrest warrant—does not strip police officers of enforcement discretion. When [defendant BPD police officers] Lioi and Russell allowed Williams to self-surrender, they were exercising the long tradition of police discretion concerning the circumstances of enforcing a misdemeanor arrest warrant. *Town of Castle Rock*, 545 U.S. at 760–61. . . . Exercising this sort of routine police discretion does not give rise to a state-created danger. *Id.* To hold otherwise would turn the thousands of instances where the police agree to allow a charged individual to self-surrender into a conspiracy to evade arrest. No precedent countenances such a reading.

*Graves*, 930 F.3d at 328–29.

Like the arguments rejected in *Graves*, Plaintiffs' state-created danger theory has no limiting principle. To the extent BPD had a policy to "prioritiz[e] misdemeanor warrants below

10

homicides," ECF 15-1 at 21, Plaintiffs' allegations fall short of pleading "affirmative actions" by any Defendant "that created or enhanced [any] dangerous conditions" that resulted in Mr. Blue's tragic death. *Turner*, 930 F.3d at 645 (quoting *Pinder*, 54 F.3d at 1176).[4]

Plaintiffs no doubt suffered a terrible tragedy. But the pleadings reflect that Mr. Kargbo bears ultimate responsibility for Mr. Blue's death, not BPD or the officers named as defendants in this case. Because Plaintiffs fail to plead a cognizable constitutional violation, Counts III and IV of the Complaint must be dismissed.[5]

---

[4] Plaintiffs' reliance on the Barnes case as evidence that BPD had a pattern or practice of unconstitutional conduct is misplaced. There, police attempted to take custody of a robbery suspect, Clark, but then surrendered him to medical professionals when he began violently cutting his own wrists. *See Barnes v. Univ. of Md. Med. Sys. Corp.*, No. 1066, 2020 WL 4250866, at *1 (Md. App. Ct. July 24, 2020). Per hospital policy, armed BPD officers were not allowed where Clark was being treated. *Id*. at *2. The hospital's security officer assigned to watch Clark "may have fallen asleep," which then allowed Clark to leave the hospital undetected. *Id.* Clark later murdered a boy named DiAndre Barnes. Plaintiffs here claim that "[t]he failure to learn from the Barnes case and implement proper procedures for warrant service on high-risk individuals constitutes a pattern and practice of unconstitutional conduct by the defendants, showing reckless disregard of the consequences as affecting the life or property of another." Compl. ¶ 63. The circumstances in *Barnes* do not support Plaintiffs' theory that BPD had a policy for prioritizing warrants that created unconstitutional risks to the general public.

[5] *Monell* liability requires an underlying violation of federal rights. *See Giancola v. State of W.Va. Dep't of Pub. Safety*, 830 F.2d 547, 550 (4th Cir. 1987) (citing *Monell*, 436 U.S. at 690–92) ("[T]o establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity."); *Anderson v. Caldwell Cnty. Sheriff's Off.*, 524 F. App'x 854, 862 (4th Cir. 2013); *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 459–60 (D. Md. 2020) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001)) ("[A] *Monell* claim cannot lie 'where there is no underlying constitutional violation by the employee.'"). Because Plaintiffs fail to plead a plausible constitutional violation in this case, their *Monell* claim against former Commissioner Harrison necessarily fails.

Furthermore, because Plaintiffs do not plead a cognizable constitutional violation, the individual defendant police officers are entitled to qualified immunity from Plaintiffs' claims. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation.")); *see also Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) (citation omitted) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

The Court notes that, in Counts I and II, Plaintiffs include a conclusory allegation that Defendants violated Mr. Blue's rights under "Article 24 of the Maryland Declaration of Rights." Compl.  ¶¶ 76, 87. Courts in this Circuit have construed Article 24 in *pari materia* with the Fourteenth Amendment. *See, e.g.*, *Barnes v. Montgomery Cnty., Md.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011) (collecting cases). Therefore,

## B. Counts I and II

Counts I and II of the Complaint assert wrongful death and survival claims under Maryland law for negligence, gross negligence, and deliberate indifference. Defendants argue that Plaintiffs' negligence claims fail because, (1) under the public duty doctrine, no Defendant here owed the decedent a tort duty; and (2) each Defendant is entitled to public official immunity. Moreover, Defendants argue, Plaintiffs fail to state a claim for gross negligence because there are no alleged facts to suggest that Defendants deliberately intended Mr. Blue harm or that they acted with reckless disregard for human life. Plaintiffs argue that Defendants had a non-discretionary duty to arrest Mr. Kargbo, and their failure to do so demonstrated a reckless disregard for human life and led to foreseeable harm, which created a particularized duty to identifiable victims, like Mr. Blue, and defeats any immunity.

"To plead negligence in Maryland, a plaintiff must 'allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach.'" *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 170–71 (D. Md. 2023) (quoting *Fletcher v. Md. Transit Admin.*, 741 F. App'x 146, 149 (4th Cir. 2018) (quoting *Pace v. State*, 38 A.3d 418, 423 (Md. 2012))). "The existence of a duty is a matter of law that a court may dispose of on a motion to dismiss." *Id.*

Relevant here is the public duty doctrine. As the Supreme Court of Maryland recently explained:

> The [public duty] doctrine provides that, "when a statute or common law 'imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort.'" *Muthukumarana v. Montgomery County*, 370

---

to the extent Plaintiffs seek to bring claims pursuant to Article 24, the Fourteenth Amendment analysis herein applies with equal force. Because Plaintiffs fail to plead a cognizable Fourteenth Amendment claim, any Article 24 claim likewise fails.

> Md. 447, 486, 805 A.2d 372 (2002) (quoting Dan B. Dobbs, The Law of Torts § 271 (2000)). "As such, under the public duty doctrine, law enforcement 'officers ordinarily may not be held liable for failure to protect specific persons because they owe no duty, as the first element of a negligence action[ ] requires, to those individuals.' " *Cooper v. Rodriguez*, 443 Md. 680, 714–15, 118 A.3d 829 (2015) (quoting *Muthukumarana*, 370 Md. at 486–87, 805 A.2d 372). "A frequently cited example is that 'the duty owed by the police by virtue of their positions as officers is a duty to protect the public,' and is thereby not enforceable in tort by a member of the public claiming that the police failed to protect them, specifically." *Pace*, 425 Md. at 157, 38 A.3d 418 (quoting *Ashburn*, 306 Md. at 628, 510 A.2d 1078) (citation modified).

*Nguyen v. State*, 340 A.3d 837, 852 (Md. 2025). Police officers "act and react in the milieu of criminal activity where every decision to deploy law enforcement personnel is fraught with uncertainty . . . ." *Id.* at 853 (quoting *Ashburn v. Anne Arundel County*, 306 Md. 617, 629–30 (Md. 1986)). If they owed a tort duty to every member of the public, then every officers' exercise of their discretionary professional duties would carry an unacceptable risk of civil liability determined "with the benefit of 20/20 hindsight . . . ." *Id.* (quoting *Ashburn*, 306 Md. at 629–30). "Such a result historically has been viewed, and rightly so, as untenable, unworkable and unwise." *Id.*

But a plaintiff may maintain an action in negligence against a police officer if the plaintiff "alleges sufficient facts to show that the defendant policeman created a 'special relationship' with him upon which he relied . . . ." *Est. of Green*, 696 F. Supp. 3d at 171 (first citing *Ashburn*, 306 Md. at 630–31, and then citing *Muthukumarana v. Montgomery County*, 370 Md. 447, 486, 805 A.2d 372 (Md. 2002)) (cleaned up). "A special relationship between an officer and an individual typically arises in two ways: (1) when an officer affirmatively acts to protect an individual, inducing specific reliance on police protection, [] or (2) when an officer takes custody of a person,

depriving them of their normal ability to protect themselves[.]" *Nguyen*, 340 A.3d at 859 (citations omitted).

Here, Plaintiffs do not sufficiently plead a duty Defendants owed to Mr. Blue beyond a general duty owed to the public at large. Rather, they claim that Detectives Heath, Ellis, and Byrd violated a duty to serve the arrest warrant issued for Mr. Kargbo and that this "negligence" allowed Mr. Kargbo to shoot and kill Mr. Blue. Courts have routinely found this type of claim barred by the public duty doctrine. *See, e.g.*, *Hill v. Hunt*, Civ. No. CCB-20-3746, 2022 WL 704001, at *7 (D. Md. Mar. 9, 2022). Because Plaintiffs fail to allege cognizable duty, their simple negligence claim fails.

Plaintiffs' claim for gross negligence against all defendants also must fail. Under Maryland law, gross negligence is considered "something more than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)). "An individual acts with gross negligence when that person 'inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018) (quoting *Barbre*, 935 A.2d at 717).

Here, Plaintiffs allege that "Defendants' failure to serve the arrest warrant on Kargbo, despite knowledge of his violent history, escalation of violence and whereabouts, demonstrated deliberate indifference to the known and obvious consequences of their actions." Compl. ¶¶ 73, 84. But these allegations do not rise to the level necessary to state a claim of gross negligence. Plaintiffs do not allege any facts to suggest that Defendants intended harm to Mr. Blue or acted recklessly or as if Mr. Blue's rights did not exist. As previously discussed, Plaintiffs do not allege that Defendants had any reason to believe Mr. Kargbo posed a threat to Mr. Blue. If Plaintiffs are

14

correct, then every moment of delay in the execution of an arrest warrant reflects a reckless disregard for human life. Such a legal standard is "untenable, unworkable and unwise." *Morgan v. D.C.*, 468 A.2d 1306, 1311 (D.C. 1983) (describing the consequences absent the public duty doctrine). Plaintiffs' gross negligence claim fails.[6]

Without the breach of a legally cognizable duty, Plaintiffs cannot state a wrongful death claim. Maryland's Wrongful Death Act "allows the decedent's beneficiaries or relatives to recover damages for loss of support or other benefits that would have been provided, had the decedent not died as a result of another's ['wrongful act,' as defined by the statute]." *Spangler v. McQuitty*, 141 A.3d 156, 168 (Md. 2016). The statute defines "wrongful act" as "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-902. "To plead a wrongful death claim under Maryland law, a plaintiff must allege: (1) the victim's death; (2) that the victim's death was proximately caused by the negligence [or other 'wrongful act'] of the defendant; (3) that the victim's death resulted in injury to the plaintiff, who falls within the category of beneficiaries defined by the statute; and (4) that the claim is brought within the applicable statutory period." *Willey v. Bd. of Educ.*, 557 F. Supp. 3d 645, 670 (D. Md. 2021). As discussed above, the Complaint fails to allege any negligent or otherwise wrongful act. Therefore, Plaintiffs cannot state a wrongful death claim. In sum, Plaintiffs' Complaint does not plead any tort duty owed by any of Defendants to the decedent or allege sufficient facts to plausibly claim that any Defendant acted with gross negligence. And because the Complaint does not, as a matter

---

[6] Plaintiffs style Count I as claims for "negligence; gross negligence; *deliberate indifference*." *See* Compl. at 15 (emphasis added). However, deliberate indifference does not appear to be a separately recognized tort apart from gross negligence under Maryland law. *See Rodriguez v. State*, 98 A.3d 376, 400 (Md. App. Ct. 2014).

of law, allege any plausible negligent or other wrongful act, Plaintiffs' wrongful death claim and survival action in Counts I and II fail.

### C.  Counts V and VI

Counts V and VI of the Complaint assert claims for funeral expenses and loss of consortium, respectively. The parties agree that, in Maryland, the recovery of funeral expenses is part of the damages recoverable in a survival action and is not an independent claim. *See Est. of Anderson v. United States*, Civ. No. AW-09-2553, 2011 WL 1231143, at *3 (D. Md. 2011) (cited by both parties). They also agree that a claim of loss of consortium is a "derivative claim," predicated on a finding of harm under other theories of tort liability. *See Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 584 (D. Md. 2016). Accordingly, Counts V and VI are contingent on the survival of an underlying theory of liability. Because Counts I through IV do not state plausible claims for relief, it follows that Counts V and VI must also be dismissed.[7]

### IV.   ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 14) is GRANTED, and the Complaint is DISMISSED without prejudice. The Clerk SHALL CLOSE this case.

 3/30/26
Date

Matthew J. Maddox
United States District Judge

---

[7] In any case, upon dismissal of the federal claims asserted in Counts III and IV, the Court would decline to exercise supplemental jurisdiction over the state law claims asserted in Counts V and VI, and these state law claims are subject to dismissal for this additional reason. *See Owen-Williams v. Higgs*, Civ. No. DKC 18-0439, 2019 WL 448810, at *6 (D. Md. Feb. 5, 2019) (declining supplemental jurisdiction over state law claims after dismissing § 1983 claims); *Mills v. Hassan*, Civ. No. GLR-18-562, 2019 WL 4750338, at *9 (D. Md. Sept. 30, 2019) (same).